```
                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF TEXAS
                         MC ALLEN DIVISION




CARLO CORDOVA,                  )   CASE NO:  7:17-CV-00014
                                )
            Plaintiff,          )            CIVIL
                                )
     vs.                        )        McAllen, Texas
                                )
ROY PADILLA, ET AL,             )   Wednesday, April 18, 2018
                                )
            Defendants.         )    (4:13 p.m. to 4:28 p.m.)


             HEARING ON MOTION FOR SUMMARY JUDGMENT

          BEFORE THE HONORABLE RICARDO H. HINOJOSA,
              CHIEF UNITED STATES DISTRICT JUDGE



Appearances:              See next page


Court Recorder:           Antonio Tijerina

Transcribed By:           Exceptional Reporting Services, Inc.
                          P.O. Box 18668
                          Corpus Christi, Texas 78480-8668
                          361 949-2988
```

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

**APPEARANCES FOR:**

| | |
|---|---|
| Plaintiff: | JOHN F. MELTON, ESQ.<br>Melton Kumler<br>2705 Bee Cave Rd., Suite 220<br>Austin, TX 78746<br><br>PETER E. FERRARO, ESQ.<br>1504 West Ave.<br>Austin, TX 78701 |
| Defendants: | EDUARDO G. GARZA, ESQ.<br>Esparza Garza<br>964 E. Los Ebanos<br>Brownsville, TX 78520 |

**McAllen, Texas; Wednesday, April 18, 2018; 4:13 p.m.**

**(Call to order)**

1
2
3    **THE COURT:** Next case is civil action Number M-17-14, *Carlos [sic] Cordova versus Roy Padilla* and others.

4    **MR. FERRARO:** Pete Ferraro and John Melton for the Plaintiff, your Honor.

5    **MR. GARZA:** Good afternoon, your Honor, Eddie Garza here on behalf of Defendants.

6    **THE COURT:** Okay, we have the motion for summary judgment that is pending. There's a false arrest claim here, there's the retaliation claim, along with a conspiracy, in relationship to both of these claims. Let me get the timeline straight here. The allegations came to someone in the school district in November of 2014 through -- from the grandmother; is that correct?

7    **MR. SPEAKER:** I believe that is correct. Or 2015.

8    **THE COURT:** Okay. I think --

9    **MR. MELTON:** It's November, 2014.

10   **THE COURT:** -- 2014.

11   **MR. GARZA:** Correct.

12   **THE COURT:** That was the first time that there was any kind of official notice to the school by somebody, --

13   **MR. GARZA:** That's correct.

14   **THE COURT:** -- and it was the grandmother.

15   **MR. GARZA:** That's correct.

1      **THE COURT:** Okay, there's an arrest warrant that
2 comes out in January of 2015.
3      **MR. FERRARO:** That's correct.
4      **THE COURT:** There was a school board election at some
5 point, but was that in April of 2014 or --
6      **MR. SPEAKER:** November.
7      **THE COURT:** -- when was that school board election?
8      **MR. MELTON:** November of 2014.
9      **THE COURT:** They had a school board election in
10 November; are you sure?
11      **MR. FERRARO:** I believe so, your Honor.
12      **MR. MELTON:** I believe so.  They were called "Team
13 November" and --
14      **MR. GARZA:** I think that is correct, your Honor,
15 their election --
16      **MR. FERRARO:** They were called "Team November."
17      **MR. GARZA:** I know their elections happened in
18 November so I don't dispute that it probably would have been an
19 electoral month.
20      **THE COURT:** Aren't school board elections usually in
21 April?
22      **MR. GARZA:** They can -- different school districts
23 can make options to have theirs November as well.  They can
24 change.
25      **MR. FERRARO:** Maybe that's why they were called "Team

1  November," your Honor, because it was unusual.
2      **MR. MELTON:** I'm almost positive --
3      **MR. GARZA:** Different school --
4      **MR. MELTON:** -- it was in November.
5      **THE COURT:** So nobody really knows.
6      **MR. GARZA:** It was in November.
7      **MR. FERRARO:** No, it was in November.
8      **MR. GARZA:** It was in November. Different school
9  districts --
10     **THE COURT:** Of 2014?
11     **MR. FERRARO:** Yes, your Honor.
12     **MR. MELTON:** Correct.
13     **THE COURT:** Okay, and so how many days after or
14 before the grandmother had come to the school?
15     **MR. MELTON:** I believe it was a few days before. She
16 came to the school on November the 14th. It's the Donna ISD
17 police. And I believe the elections --
18     **THE COURT:** Wouldn't the election happen before
19 November 14th?
20     **MR. MELTON:** Yes, I believe so. So I believe the
21 election happened a few days before she went to --
22     **THE COURT:** So how could any of this be connected to
23 anything that happened with regards to the election?
24     **MR. MELTON:** It was in retaliation for --
25     **THE COURT:** Retaliation, somebody comes to you and

1  the grandmother says and information is -- they actually go
2  through the whole process.  They find the fact that there was
3  really a visit to the hotel on a certain day, that he actually
4  took the young girl to the drug store for to purchase something
5  with regards to a potential situation, and so how would this be
6  retaliation for something about something that the school board
7  knew nothing about until after the election?
8           **MR. FERRARO:**  May I, your Honor?
9           **THE COURT:**  Well, somebody needs to.
10          **MR. FERRARO:**  This isn't the first time that she went
11 to the school board with this complaint.  This is the first
12 time she went to the Donna ISD police department to file a
13 report.  I'm not sure what time she called.  What she did was,
14 there was an existing superintendent, and this lady was working
15 for "Team November."  And she called the person who was going
16 to be the next superintendent --
17          **THE COURT:**  The grandmother?
18          **MR. FERRARO:**  The grandmother called the person's
19 wife who works for the school district who's going to be the
20 next superintendent if "Team November" gets their way, and she
21 called her and told her about it.  And I believe that was
22 before the election, but I don't know that for certain, your
23 Honor.
24          **MR. MELTON:**  Yeah, and --
25          **THE COURT:**  But the grandmother --

1  **MR. FERRARO:** But I know (indisc.) the record --

2  **THE COURT:** -- has nothing to do with the school
3  district.

4  **MR. MELTON:** No.

5  **THE COURT:** That's not retaliation by the school
6  board. The school board finds out in November from the
7  grandmother that there are these horrible fact patterns that
8  the grandmother is alleging with regards to the child, to the
9  student. And the school board actually finds more information.
10 They actually went and proceeded to find that the Plaintiff
11 here actually had been at the hotel, that he had paid for a
12 hotel room that particular night that the grandmother
13 described, that he had taken the young student to the
14 particular pharmacy to buy something in relationship to -- that
15 would indicate that there had been some kind of sexual contact.
16 And so the grandmother threatening somebody or whatever, what
17 does that have to do with the school board members or the
18 school district?

19 **MR. GARZA:** And also, your Honor, that there had been
20 a complaint against that particular instructor a year before by
21 a different student --

22 **THE COURT:** By a different student.

23 **MR. GARZA:** -- as well, they learned that.

24 **THE COURT:** So how does this turn into a retaliation
25 claim?

1    **MR. FERRARO:**  So the only way it can turn into a
2    retaliation claim, your Honor, is if they -- you have to
3    remember, this accused is the son-in-law of the superintendent
4    that they, "Team November," wanted to remove.  And that's in
5    evidence and that he's the son-in-law of the superintendent
6    that "Team November" wanted to remove.  So what happens is
7    they --
8    　　　　　　**THE COURT:**  "Team November" won or didn't win?
9    　　　　　　**MR. FERRARO:**  Won.
10   　　　　　　**MR. MELTON:**  They won.
11   　　　　　　**THE COURT:**  Okay.
12   　　　　　　**MR. FERRARO:**  So later two of them went to jail but
13   that's neither here nor there I guess.  One of the reasons that
14   if you look at the affidavit of Norman Cordova, before they
15   arrested him, his son, Carlo, they called him up.  Norman would
16   not support "Team November" and he --
17   　　　　　　**THE COURT:**  Yeah, but when did they call Mr. Norman
18   Cordova, and the whole thing about the billboard, but when did
19   they call him about that?
20   　　　　　　**MR. FERRARO:**  They called him about the billboard
21   first, before the election.  They called him later to tell him,
22   ha-ha (phonetic), we're going to arrest your son.  And that's
23   in his affidavit.
24   　　　　　　**THE COURT:**  Well, they weren't going to arrest his
25   son, they were going to go file a complaint, which --

1     **MR. FERRARO:** They --

2     **THE COURT:** -- was signed by a justice of the peace.

3     **MR. GARZA:** They had received a complaint by a
4 citizen, meaning the grandmother, which turns out to be true,
5 they did (indisc.)

6     **THE COURT:** Yes, and can you imagine if they had not
7 followed through with that information? Somebody could have
8 had a serious cause of action against the school district.

9     **MR. FERRARO:** I agree that the facts the way you
10 explained it exist. But they had still a duty to present a
11 probable cause affidavit that was real, and that's our issue
12 here. The signing police officer said, I didn't believe I had
13 probable cause. The signing police officer checked with the
14 chief of police of Donna Police Department who believed there
15 was no -- this is all in the affidavit, who believed there was
16 no probable cause. Padilla wanted to make this arrest and so
17 he took this citizen's complaint, and without thoroughly
18 investigating it and without --

19     **THE COURT:** Well, there was an investigation because
20 they actually found that there was a -- that the Plaintiff had
21 actually been at that hotel, the Plaintiff had actually paid
22 for that hotel, that the Plaintiff had actually taken --

23     **MR. SPEAKER:** Wasn't a student.

24     **THE COURT:** -- the student to the drug store or
25 had --

1         **MR. FERRARO:** She wasn't a student at the time that
2 that occurred.
3         **THE COURT:** Well, at the --
4         **MR. FERRARO:** That was --
5         **MR. GARZA:** (Indisc.) she was a student.
6         **THE COURT:** Nevertheless, there had -- some of this
7 had occurred while she was a student.
8         **MR. FERRARO:** Well, what occurred while she was a
9 student was back in May. This was in -- all that was in
10 September when she had graduated and no longer a student. That
11 was the allegation.
12         **MR. GARZA:** The allegation was improper relationship
13 with a student which began when she was a student at the high
14 school and --
15         **MR. FERRARO:** Her last day of school allegedly.
16         **MR. GARZA:** No, actually that -- not for the
17 allegations that had been made. There was allegations that
18 there was some sexual contact, sexual conduct at the school
19 during the school year, and then it continued on thereafter.
20 All that was investigated. Some of it was proven as fact.
21 We've actually got receipts from the hotel --
22         **THE COURT:** Right.
23         **MR. GARZA:** -- to verify that that's --
24         **THE COURT:** And that's while she was in school. Or
25 was that later?

1         **MR. GARZA:** The hotel was right after she graduated.

2         **MR. FERRARO:** The hotel was not.

3         **MR. MELTON:** Late in September, your Honor.

4         **MR. GARZA:** But it came -- but the point is, part of
5 the assertions that were being made by the individuals were
6 literally verified by a receipt and which is kind of
7 extraordinary as far as determining to confirm allegations such
8 as this. But there -- in that -- what's important to consider
9 here, too, your Honor, I think, and the point that perhaps
10 Plaintiff's counsel is missing is, you know, Judge Contreras,
11 the independent magistrate, reviewed all this information, and
12 he made the determination that probable cause existed. So to
13 argue that some other reviewing officer or somebody else has a
14 differing opinion, the independent magistrate had very specific
15 evidence that's been uncontroverted. We've outlined it ad
16 nauseum in our summary judgment, in our replies, including the
17 allegations that occurred one year prior to this one, which
18 gave the magistrate the impression that a -- there's a
19 probability that a violation could have occurred, so it's --
20 the system begins and then they can start issuing an arrest
21 warrant. And that's what happened here.

22         **THE COURT:** So your claim is that the grandmother was
23 in a conspiracy with the November team?

24         **MR. FERRARO:** The grandmother worked the polls for
25 the November team.

1 **MR. GARZA:** I think she was nonsuited. She was a
2 defendant once and I think --
3 **THE COURT:** Then --
4 **MR. GARZA:** -- she's nonsuited.
5 **MR. FERRARO:** We nonsuited --
6 **THE COURT:** -- the grandmother's not a --
7 **MR. FERRARO:** -- her, but she worked the polls.
8 **THE COURT:** -- defendant here. But it makes no sense
9 to say that the grandmother would use political reasons to go
10 make accusations about the grandchild strictly for some
11 campaign.
12 **MR. FERRARO:** Well, we don't believe that she made
13 those strictly for the campaign, your Honor. We believe she
14 made those strictly for money, because later they filed a suit
15 and collected money.
16 **THE COURT:** Well that's a pretty bad thing to say
17 about the grandmother, that she was doing it for money.
18 **MR. FERRARO:** Even though --
19 **THE COURT:** I mean, I would think any grandmother
20 would be upset about this, money or no money.
21 **MR. FERRARO:** Assuming it --
22 **THE COURT:** If any of this is really true, I
23 cannot --
24 **MR. FERRARO:** I agree, assuming it was true, your
25 Honor.

1     **THE COURT:** Yes, but I cannot imagine that the
2 grandmother would just be doing this for money and go --
3     **MR. FERRARO:** Well that's a matter of her
4 credibility, your Honor. I agree --
5     **THE COURT:** Well, some of --
6     **MR. FERRARO:** -- with you that it tests credibility.
7     **THE COURT:** -- the things she said have definitely
8 been proven to be true.
9     **MR. GARZA:** And they were verified by the --
10     **THE COURT:** She didn't make up -- she talked about
11 the hotel room, that's been verified. She talked about another
12 incident, that was verified. You know, --
13     **MR. FERRARO:** She -- the case was dismissed against
14 Carlo Cordova, your Honor. Everything --
15     **THE COURT:** It wasn't dismissed, the Grand Jury no-
16 billed it, right?
17     **MR. FERRARO:** Right, it was no-billed.
18     **MR. GARZA:** That's correct. And --
19     **MR. FERRARO:** But those things in September weren't a
20 crime, your Honor.
21     **MR. GARZA:** And in the course of this lawsuit,
22 through deposition testimony of the Defendant, we learned other
23 things that were verified, such as them physically being in a
24 truck together, even though they had disputed ever having that
25 kind of contact before, being at his place of business, which

1   is something that the minor had mentioned earlier on, that was

2   also verified.  Now that was after the fact, those two facts

3   weren't in the probable cause affidavit, we learned those in

4   depositions.  But we learned after the fact some of those

5   things were further true and further confirmed.

6           **MR. FERRARO:**  All those facts that he's talking

7   about, your Honor, I agree they're in the -- that he's

8   accurately stating the facts.  They all occurred after she was

9   a student and while she was seeking help for a bond.

10          **THE COURT:**  For a what?

11          **MR. FERRARO:**  A bond.  Carlos Cordova's also a

12  bondsman, works for a bondsman.

13          **MR. GARZA:**  But it's consistent with her version of

14  the events wherein she said, we went in his truck, went to the

15  drug store to buy a morning after pill, were at the place of

16  business, all that was confirmed after the fact, sworn

17  testimony, by the Plaintiff in this suit.  Her story checks out

18  even further if you look at her testimony -- at his testimony,

19  pardon me.

20          **THE COURT:**  Is there anything else you all wanted to

21  say?

22          **MR. FERRARO:**  Well, I do want to point out that the

23  affidavit, your Honor, was signed by McCandless, who didn't

24  believe he had probable cause.  That wasn't told -- Padilla

25  took the affidavit to Judge Contreras.  The fact that there was

1  -- that the arrest -- that McCandless did not believe there was
2  probable cause in that affidavit was kept from Contreras.
3        **THE COURT:** He's not the one making the decision as
4  to whether there's probable cause or not. He's just presenting
5  the affidavit. He hasn't said I lied in the affidavit. All he
6  has said is, I have this opinion. But he never said that
7  anything that he wrote on there was a lie. It was the --
8        **MR. FERRARO:** He --
9        **THE COURT:** -- justice of the peace that made the
10 determination as to whether there was probable cause.
11       **MR. FERRARO:** And he had no personal firsthand
12 knowledge of things in the affidavit, he said that at his
13 deposition.
14       **THE COURT:** Go ahead.
15       **MR. MELTON:** He was not present --
16       **MR. GARZA:** He swore to the statements in the
17 affidavit. But the point of that affidavit, your Honor, that's
18 why he takes it to an independent magistrate, to review the
19 information and determine whether or not probable cause exists
20 before an arrest occurs.
21       **MR. FERRARO:** For instance, McCandless was not
22 present when the victim gave her statement. He --
23       **THE COURT:** Well, I'm ready to rule here.
24       **MR. FERRARO:** (Indisc.)
25       **THE COURT:** You all have filed enough stuff. With

1　regards to the Fourth Amendment false arrest claim, the Court's

2　going to grant the motion for summary judgment.  This was taken

3　before a justice of the peace who made an independent decision

4　to go ahead and do the arrest warrant.

5　　　　　　　With regards to the First Amendment retaliation

6　claim, the Court is going to find that there is a fact issue

7　based on the fact that there are disputes here as to an

8　election, as to whether threats were made or not threat, while

9　at the same time the school district says we have plenty of

10　evidence, it had nothing to do with politics, and you say

11　everything has to do with politics.  And so that does create

12　some kind of fact issue, and that's basically all the claim

13　that there is here, if there is any claim.  And the school

14　district says we have plenty of defense that we can prove that

15　this is -- we were right, and you have evidence that you say,

16　well, we can prove that it was a retaliation claim.  And so

17　that's where we're at and that's all that's left here.  Are we

18　ready just to set this for a trial or what are we --

19　　　　　　　**MR. GARZA:**  Your Honor, --

20　　　　　　　**THE COURT:**  -- going to do here?

21　　　　　　　**MR. FERRARO:**  We're ready for trial.

22　　　　　　　**MR. GARZA:**  Your Honor, if I may (indisc.) there was

23　a qualified immunity defense assertion as to the individuals as

24　well.  That's the McLynn (phonetic) argument regarding the

25　issues of whether or not there was a clearly established

```
 1   violation of law.
 2              MR. MELTON:  That's with respect to the false arrest
 3   claim.
 4              MR. GARZA:  Oh, so I guess --
 5              THE COURT:  There's nothing left --
 6              MR. GARZA:  The individuals --
 7              THE COURT:  -- of the false -- yes.
 8              MR. GARZA:  Got it.
 9              THE COURT:  There's nothing left.  The only thing we
10   have is the claim with regards to the school district and the
11   retaliation.
12              MR. GARZA:  Thank you for clarifying, your Honor.
13              MR. MELTON:  Thank you, your Honor.
14              MR. FERRARO:  (Indisc.)
15              MR. GARZA:  Then, yes, your Honor, --
16              THE COURT:  Well, do we need to set this --
17              MR. MELTON:  We need to set a trial date.
18              THE COURT:  -- for a hearing?  Do you all need to
19   prepare a pretrial order with what's left or what are you all
20   going to do?
21              MR. MELTON:  We prepared a pretrial order once but
22   we --
23              THE COURT:  Well, we --
24              MR. MELTON:  -- need to amend it.
25              MR. GARZA:  Probably have to narrow it down a little
```

1 bit.
2       **THE COURT:** Yes.
3       **MR. GARZA:** Or we could probably just kind of maybe
4 tailor it a bit to see if we could narrow it down your Honor.
5       **THE COURT:** That would be helpful. And can we just
6 set a status conference in about a month so we know whether
7 we're ready for trial and when?
8       **MR. MELTON:** Yes, your Honor.
9       **MR. GARZA:** Yes, your Honor.
10       **THE COURT:** So we don't lose this case just sitting
11 there.
12       **MR. MELTON:** Yes, your Honor.
13       **THE COURT:** Okay, we'll have a status conference on
14 this case on June the 14th at 2:30 just to find out where we
15 are and whether we're ready to set it for a trial, and
16 everything else, and whether we've done everything we need to
17 to be ready for a trial.
18       **MR. GARZA:** Thank you, your Honor.
19       **THE COURT:** Okay?
20       **MR. MELTON:** Thank you, your Honor.
21       **THE COURT:** Thank you all.
22       **MR. FERRARO:** Thank you.
23       **MR. GARZA:** May we be excused?
24       **THE COURT:** Yes.
25       **MR. GARZA:** Thank you.

MR. MELTON: Thank you.

(This proceeding was adjourned at 4:28 p.m.)

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                    August 29, 2018
          Signed                                        Dated

*TONI HUDSON, TRANSCRIBER*